Xiamen Kingdomway So let me just briefly go to the specification and provide support for what I just said. Yeah. Oh yeah, and one more thing of course. Alright, let me back up a moment. It's clear in the specification itself at column 58 through 65 that oxidation is occurring during the culturing step. That's column 8, line 58 through 65. In fact, oxygen is added during the culturing step and it's undisputed that if in the presence of oxygen, the reduced Q10 will be oxidized. So it's certainly happening during that portion of the manufacturing process. At column 17, line 20 through 25, it says it's not necessary to protect the reduced Q10 from an oxidation reaction. Where are you reading, Counselor? Column 17, lines 20 through 25. Okay. That's appendix 75. Okay, let's hear from the other side and we'll save you rebuttal time. Okay. Thank you, Your Honor. And please report. Timothy Walker. Timothy Walker for the Shinjo defendant and appellee. As a preliminary matter, because inert gas atmosphere, that issue has been waived. The judgment of non-infringement as to independent claims 1 and 11 and all their dependent claims to be affirmed. There's also been no argument here made that the district court misapplied its claim constructions to the accused process. In fact, claims to be made. Wait, we only have a few minutes to talk on what's not reached. Could you get to the ordering staff? I mean, it seems to me that that's the heart of this case, or at least for me, and I don't see any clear way to read those claims definitively one way or the other. I think all I can do is agree with Your Honor, is that there is clear sequencing language in the claims, and the sequencing language is unambiguous. It requires... I think there's, as your friend pointed out, the and and then suggest sequencing language one way, and the thus obtained suggest sequencing language the other way. What are we to do with that? I don't think that the difference that he is pointing to mandates that particular reading of the claims. Just because it says that it's, again, the use of the word thus obtained, oxidizing thus obtained, you don't have the thus obtained reduced coenzyme Q10 until you've disrupted the microbial cells. So the step is disrupting microbial cells to obtain reduced coenzyme Q10, and oxidizing thus obtained reduced coenzyme Q10. So you have to disrupt first, according to this, before you oxidize. You can't do one before the other. Isn't this issue tied into the district court's construction and use of the word converting all or substantially all of the reduced coenzyme Q10? Where does that come from? Where does the all or substantially all construction come from? That has to do with maintaining the sequencing that's been claimed here. The claim language... It's neither in the specification or in any of the claims that you have to have all or substantially all of the reduced coenzyme Q10 to have been involved and converted. It is not specifically said in the specification or in the claims that it needs to be done that way, but in order to preserve the sequence that is in the claim language. That's my point. It's substantially all preserves, appears to preserve a sequence. Yes. But if we find that that's an imported limitation, then what does that do to the argument regarding the sequence? I would say that it's not an imported limitation if it's required in order to maintain the claim sequence. That's our understanding of it. If you allow multiple oxidation steps, then you lose the sequence because now you're oxidizing, extracting, and oxidizing, and that doesn't fit either of the independent claims. But we're told that oxidation occurs spontaneously even at the beginning of the process, so you're not saying that it has to be totally rigorous. No, that's a separate step, and I think we need to be clear here about what the culturing step is about and what we're culturing for. And again, we don't want to forget what the initial and the threshold limitation is. We are culturing cells to make reduced coenzyme Q10 at a ratio of at least 71%. But we're told that that step is in the prior art, so that what we really are concerned with is this continuous process. Is that correct? I would say that's only partly correct in the sense that the... Yes, a lot of this is in the prior art, and I think there are novelty issues that aren't ripe here, but the requirement is that the cells be cultured to make 71% reduced. That is a ratio, and you achieve that during the culturing, and while you're culturing, while the cells are alive, they need oxygen. And so while you're culturing, you are providing oxygen, and the purpose of CoQ10 is as an electron transport molecule, so it undergoes a cycle on a molecule-by-molecule basis. It's being cycled. It's being oxidized and reduced. But the claim limitation is a ratio of 71%, and I think the oxidation... We're talking about the sequence issue. Yes. Why is it that the sequence can occur, even if all of the CoQ10 isn't oxidized? Why is there a requirement that it be all or substantially all? Well, I think the intent was to preserve the sequencing. I think maybe what Your Honor is... That's my point. If you don't have substantially all, why can't the sequencing be preserved? I don't see the dependence. I think that the... And maybe I'll... If I can just rephrase what you're asking me, is that what I think was intended to be precluded by this claim construction is multiple oxidation steps, and partial oxidation throughout the process. I think that was what was intended to be precluded. And if you're suggesting that one could meet the claim limitations by oxidizing, oh, say, half of it, and then no additional oxidation steps, then maybe that's what Your Honor has in mind. And I suppose that's possible. We know that this is specifically claimed as an industrial process. We know that there is disclosure of the use of oxidizing agents, which are intended to achieve a substantially complete oxidation. And for those reasons, I think that was really the basis for requiring the substantially complete oxidation, is that one of ordinary skill in the art would not think that in an industrial process to make oxidized, you would deliberately or, you know, you would not oxidize at all. So you're suggesting that we should read that limitation in because that would be the best practices? I mean, what makes a difference if their patent claim results in an inefficient process and they don't oxidize all the reduced DOQ10 they obtain, if they only oxidize 50% of it and use that? What makes a difference in terms of reading the claim language? Well, in terms of reading the claim language, again, I think I've explained it as best as I can that the intent of that provision and the intent of reading that in was to preserve the sequencing. If the sequencing is preserved and if what's precluded is some additional… I understand what you're saying, but I don't understand why, even if you preserve the sequencing, that last step has to oxidize all or nearly all. It just says oxidize. It could oxidize 25% of it. It'd be a dumb way to do business probably, but it still doesn't seem like that would disrupt the sequencing. Again, I think I've given your honor the best answer I have, which is that it's claimed as an industrial process for making coenzyme Q10 and, you know, one of our very skilled would think that you're trying to do it all and, again, you have to… Something's got to be in the claim construction to preserve that sequencing and… But, again, why is it all or not… that all or substantially all? Don't you still win if you get it the specific order and that that last step is an active oxidation? You don't need the all or substantially all. You're correct that we win no matter what, because at least the Shenzhou process has… The Shenzhou process has oxidation across its process. That's undisputed. And so as long as the sequencing is preserved, there is no… You're saying in order to preserve the sequencing, we have to affirm the district court's construction of all or substantially all. I don't know that that has to be done. I do think that the sequencing has to be preserved and that multiple oxidation steps ought to be precluded and that oxidation during extraction needs to be precluded because that's what the claim steps say. Is it conceded that there's no infringement on that construction? That's my understanding. They have not discussed at all the accused process fees. Well, they haven't gotten there, but my question is… And I think we started out with the assumption that that would end the entire case or not? It's our view that yes, it would. If the sequencing is preserved and you cannot have multiple oxidation steps in a single process, then Shenzhou does not infringe. And there's nothing in the record before the court to explain how the XKGC process infringes. Did you want to share time with your colleague? Yes, we did. Or take the rest of it? Yes, he has five minutes at least. That would be intense. Okay, proceed. Mr. Neenstadt, how do you pronounce your name? Neenstadt, thank you. Good morning, Your Honors, and may it please the Court. I was going to address the third claim limitation in this case after my colleague had addressed the first two, and the third limitation is the 70 mole percent limitation. Now, I heard Judge Hughes's point, and to that point, the reason that it does matter somewhat in this case, first of all, is that Conecuh appealed that particular claim… But the district court didn't rely on that in its judgment. That's correct. The district court did not rely on that in its judgment, but if… Well, aren't you just asking us to render an advisory opinion on a claim construction? Well, it's in this court's discretion, of course, whether to affirm that, but it's arguably… It doesn't matter what we say one way or another to the judgment on that claim construction, though. Well, so to take one hypothetical, if this court were to reverse the district court's constructions on the other two terms, then it would matter… Then you'd like an advisory opinion on that one when you go back. Well, I guess I'd call it an affirmance, not an advisory opinion, because the district court has already ruled on that, and that particular construction was appealed to this court. So I think I would use the word affirmance, but it's certainly within the discretion of the… But it wasn't part of the district court's summary judgment, was it? It did not. The summary judgment ruling on non-infringement did not hinge on that. That's correct. So if we rule on that issue, we would be issuing a declaratory judgment or an advisory opinion of sorts. Well, again, I'm not sure… Your Honor can refer to it however you please. Our ruling on that issue does not impact the judgment in this case whatsoever. Okay. Is that… I mean, I'm not trying to bully you into that, but isn't that the case? Don't you agree? Well, it would avoid the possibility of that term, of the claim construction, again, being appealed, if it went back on remand, and then Kanika appealed back to this court. It would avoid that back-and-forth process. That didn't answer my question at all. I mean, the question was, our ruling on this construction doesn't affect the judgment in this case. It may affect it down the line, depending upon if certain things happen. That's right. Whether we agree with you or we agree with them, whatever claim construction we give here is not going to change the judgment. It would not change the judgment at this stage or on remand. That's correct. So I could address some of… I could follow up on my colleague's points and the questions that Your Honors asked. Can you tell me about this ordering thing? We've looked at the claim language. The claim language itself doesn't seem particularly helpful. Either way, is there anything else? I mean, I know your friend pointed to some stuff in the specification. I looked at it quickly. Is there anything else that can give us some guidance here, either intrinsic evidence or extrinsic evidence, of whether these ordering steps are required or not? Well, first of all, if you look at the claim language itself, for example, in Claim 22… That's not what I asked you. I just told you the claim language is not helpful to me. So what else besides the claim language can you point me to, either in the specification or if there's any extrinsic evidence? We've been over the claim language very clearly. There are arguments on both sides in the claim language. If you don't have it, I know you weren't prepared. I just wanted to address the then point, the and-then versus and point, but I'll pull up the… I apologize. I mean, I know you were prepared to argue the other point, so I just thought if you had an easy answer, that's fine. No, I mean, our argument primarily, we think the claim language is extremely clear, and there are a number of cases from this Court. Mantec v. Hudson, 1998 case, EPAS v. 3Com, 2007 case from this Court, indicated that, for example, EPAS held, because the language of most of the steps of its method claim referred to the completed results of the prior step, EPAS must show that all of those steps were performed in order. Here you have numerous pieces of language to address the and-versus-and-then point. The thus obtained, if you look at Claim 22, the thus obtained term actually acts as a then term. So I don't see that and-versus-and-then argument as valid. And there are multiple pieces of language like that. As far as this all-or-substantially-all, which is part of the same construction, the reason it matters is because, as Kanika's counsel has argued, that in the preamble, the two independent method claims say that the claims comprise a number of steps. And Kanika's argument is that, therefore, you could insert other steps. So if you construed any of the steps as not requiring all-or-substantially-all of that process, then what you could do is insert additional steps. For example, if you have extracting and then oxidizing and either one were treated as not processing all-or-substantially-all of the CoQ10, then what you could do is, for example, before the extracting step, add another oxidizing step, and before that oxidizing step, add another extracting step, and you could add all these little steps. Would you agree that oxidizing occurs throughout the entire process? Well, no, and that gets to the heart. Your argument is that it can only occur, and only occurs in one of the steps. Well, all-or-substantially-all leaves the possibility for some de minimis or some small amount of oxidation or extraction that's occurring in another process. That's the substantially-all part. Is that critical to your position? Because they do say throughout the specification that this reduced form just spontaneously oxidizes if there's any stray oxygen around. Well, so first I'll answer, it's important to our position that it be a significant amount of the step occurring. Whether that has to be substantially-all, I'm not sure, but at least 50%, something like that. So there's no requirement that it be all-or-substantially-all. You're arguing it should be a significant amount. Yeah, and I think substantially-all could be interpreted. I mean, maybe there's a very slight wording difference that would be tolerable. That was there on the district court to use that term. Yes, the district court used that term, and maybe it could have said over 50%, a majority, or something like that. Maybe it could have worded it that way. But I think all-or-substantially-all also makes sense. Now, to address the point about why does the patent discuss oxidation throughout the process, that goes back to how they were able, how Canica was able to get this patent in the first place. The way Canica, the entire point of this patent is that the prior art, there's a ton of prior art where oxidized CoQ10 is obtained by just allowing oxidation to occur throughout the entire process. And what Canica did here is they tried to make an end run around that prior art by claiming first producing reduced CoQ10 and then in a separate step oxidizing it. That's how they were able to get around the prior art. And, of course, from an industrial perspective, this is nonsensical because these are claims that are drafted solely to try to shoehorn infringement into them. Industrially, that makes no sense because you're protecting the CoQ10 from being oxidized only to later oxidize all-or-substantially-all of it. And so this would be kind of an inefficient and very strange industrial process. It doesn't make any sense. So that explains why the specification talks about one thing, which is allowing the whole thing to oxidize the whole way through, which is how the prior art does it. And then the claims had to be narrowed down into this stepwise order in order to get the claims allowed in the first place. And now they're trying to go back and shoehorn basically the prior art into their narrowed claims, which had to be narrowed in order to get them to begin with. Okay, I think we have that argument. Thank you, Mr. Nista. Thank you. Okay, Mr. Noah. Let me just address the last point that was made. With all due respect to my colleague, the microorganisms set forth in the patent only produce reduced Q10. The discovery here was the fact that those microorganisms produced enough reduced Q10, so when you oxidize it, you got more oxidized Q10. That's what the whole patent is about. So saying it's nonsense to produce reduced Q10 first and then oxidize it is nonsense. That's what we're talking about here, and it says so in the patent. I mean, that's the purpose. So let's go back to Judge Hughes' concern on the sequence, all right? Let's keep in mind what we're trying to do here. We're trying to make oxidized Q10. That's the purpose of this. So oxidation occurring throughout the process is what we're looking to do. The Interactive Gift versus CompuServe case says, look at the claims first. If it mandates that the steps are in order, so be it. If the steps do not – if the claims language does not mandate that, look at the specification. That's what I did, right? I think the court would agree that the claim language doesn't mandate that those steps be in a particular order. And if you go to the specification, you see that reduced Q10 does not have to be protected from an oxidation reaction, and we're trying to oxidize it. That's the purpose of the whole process. It certainly, to me, indicates that oxidation is occurring throughout the process, that there is no separate oxidizing step, either in the disruption or extraction. And, in fact, it says in the patent that disruption and extraction can occur at the same time. So how can there be a fixed order of the steps? And I'm backing up and looking at the industrial process is what we're trying to – that's what the patent was trying to cover, right? So, in addition, of course, there can't be – what the district court is saying with that construction is the only time oxidation can occur is between disruption and extraction. And that doesn't count the fact that we are looking to get 70 more percent in the culturing step. You are oxidizing 30 percent of it right there. So that's another reason why the sequence of the steps is not clear. In addition, my colleague mentioned the fact that somehow culturing oxidation in the culturing step doesn't count. I refer the court, and I won't read this, but if you take a look at column 1, lines 50 through 52, it clearly says that the microbial cells, which are the live cells, are being oxidized during culturing. That's all I have, Your Honor. We respectfully request that this course be remanded for a new claim constructed with the district court. Thank you. Thank you. Thank you all. Case is taken under submission.